UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE DOE, an individual and citizen of the
State of Florida,

     Plaintiff,

  v.

KALAMAZOO PUBLIC SCHOOL
SYSTEM, a Michigan Public School, and
AARON SAUTER, a citizen of the State of
Michigan, in his individual and official
capacity,

     Defendants.

Case No.
Hon.

_____/

Joel B. Sklar (P38338)
LAW OFFICE OF JOEL B. SKLAR
Attorney for Plaintiff
500 Griswold, Suite 2450
Detroit, MI 48226
313-963-4529 / 313-963-9310 (fax)
joel@joelbsklarlaw.com

_____/

## **COMPLAINT AND JURY DEMAND**

Plaintiff Jane Doe, by and through the Law Office of Joel B. Sklar, files this

action against Defendants Aaron Sauter and the Kalamazoo Public School System

and says:

1.  Plaintiff Jane Doe is a resident and citizen of the State of Florida.

2. Defendant Aaron Sauter (Sauter) resides and/or transacts business in Kalamazoo, Michigan which is in this Judicial District. He is a citizen of the State of Michigan He is being sued in his individual capacity.

3. The Kalamazoo Public School System (KPSS) is located and transacts business in this Judicial District.

4. Defendant Sauter and KPSS are not entitled to any governmental or other immunity from Plaintiff Jane Doe's suit.

5. Qualified immunity does not apply to Defendant Sauter because any reasonable person would know that he violated Plaintiff Jane Doe's clearly established *First Amendment Free Speech* rights when he refused to take "No" for an answer, physically imposed himself on Plaintiff Jane Doe, and retaliated against her.

6. Venue is proper in this Court because all of the actions, events, transactions, and occurrences which form the gravamen of this action took place in this Judicial District. *28 U.S.C. §1391*

7. This Court has diversity jurisdiction over this case pursuant to *28 U.S.C. § 1332* because Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000 exclusive of costs, fees, and interest.

2

8.    The Court also has original federal question jurisdiction pursuant to *28 U.S.C. § 1331* over Plaintiff Jane Doe's constitutional claim and those related to federal statutes.

9.    The Court has supplemental jurisdiction over Plaintiff Jane Doe's state law claims pursuant to *28 USC §1367*.

**FACTUAL ALLEGATIONS**

**KPSS MIDDLE SCHOOL PRINCIPAL AARON SAUTER'S COERCED *QUID PRO QUO* SEXUAL RELATIONSHIP WITH SUBORDINATE TEACHER JANE DOE**

10.    On December 18, 2023, Plaintiff Jane Doe was a teacher at KPSS Milwood Middle School.

11.    Plaintiff Jane Doe attended KPSS as a child and the job was a dream come true.

12.    Around that time, KPSS offered a new grant opportunity for employees called "Grow Your Program" which offered a fully funded bachelor's degree in education.

13.    Defendant Sauter personally contacted Plaintiff Jane Doe and suggested that she apply because she would be excellent in that role.

14.    Defendant Sauter told Plaintiff that he believed in her, that she had a special way with students and that she could make a meaningful impact.

3

15. Defendant Sauter personally contacted his friend Steve Leland who oversaw the program and advocated for Plaintiff Jane Doe to be granted a spot.

16. Plaintiff Jane Doe was incredibly grateful. She believed these opportunities were being given to her because she was valued, talented and deserving.

17. Little did Plaintiff Jane Doe know that Defendant Sauter was actually grooming her for sex.

18. In the summer of 2024, Plaintiff Jane Doe was offered the Resource Teaching Center (RTC) position by Defendant Sauter without an interview process.

19. Plaintiff Jane Doe was proud of herself and believed Defendant Sauter had chosen her because she was the most qualified candidate.

20. Plaintiff Jane Doe returned to work in August 2024 in her new position and had already begun coursework toward her bachelor's degree through the district-funded program.

21. Plaintiff Jane Doe was hopeful and excited about her future.

22. In September 2024, Plaintiff Jane Doe and her husband began having marital difficulty.

23. Plaintiff Jane Doe confided in a female co-employee and Defendant Vice Principal Sauter, her immediate supervisor, about her marital struggles and its toll on her mental health.

24.     Shortly after he learned about her troubled marital struggles, Defendant Sauter began making sexual comments to Plaintiff that made her uncomfortable and confused.

25.     Defendant Sauter told Plaintiff Jane Doe *"I knew I wanted to hire you the moment I saw you"* and *"I told my friends I hired a baddie."*

26.     Plaintiff Jane Doe was hurt.  She thought Defendant Sauter had helped her career advance because she displayed hard work, performance, and potential.

27.     Defendant Sauter's remarks triggered painful feelings of Plaintiff Jane Doe being sexualized, which she had experienced for years.

28.     In October of 2024, Defendant Sauter met Plaintiff Jane Doe alone in his office.

29.     During the meeting and without asking her for permission or consent, Defendant Sauter grabbed Jane Doe's feet, removed her shoes, messaged her feet, and pulled each toe one by one until each cracked.

30.     Defendant Sauter was Plaintiff Jane Doe's direct report and someone she saw every school day. Defendant Sauter was a married man whose wife taught at KPSS and whose daughter attended KPSS.

31.     Plaintiff Jane Doe was stunned, confused, intimidated and uncertain what to do. She said nothing.

32.    Defendant Sauter had helped shape and advance Plaintiff Jane Doe's career path, advocated for her, and had tremendous influence over her employment and career as teacher.

33.    Plaintiff Jane Doe was terrified of displeasing Defendant Sauter and losing everything she had worked so hard for.

34.    Defendant Sauter "suggested" that he and Plaintiff Jane Doe meet alone more often.

35.    Plaintiff Jane Doe did as she was instructed and met privately in Defendant Sauter's office.

36.    "Meetings" in Defendant Sauter's office increased with frequency and became sexually intimate.

37.    All of the sexual contact between Plaintiff Jane Doe and her boss always occurred in *his* office at the middle school.

38.    Defendant Sauter and Plaintiff Jane Doe exchanged photographs and "silly reels" on Instagram.

39.    During school, Defendant Sauter visited Plaintiff Jane Doe when she was alone in the school's RTC, grabbed her, pined her up against the wall, kissed her neck, caressed her body, and left.

40.    In November of 2024, Defendant Sauter instructed Plaintiff Jane Doe to arrive at school early every day.

41.    Plaintiff Jane Doe did as her boss ordered.

42.    After she arrived early at school, Defendant Sauter would meet alone with Plaintiff Jane Doe in *his* office.

43.    Defendant Sauter would prop Plaintiff Jane Doe up on his desk and perform oral sex.

44.    When he was done, Plaintiff Jane Doe would give Defendant Sauter oral sex.

45.    These sexual encounters took place before school started, after school ended and sometimes both on the same day, depending on what Defendant Sauter wanted.

46.    Plaintiff Jane Doe had sexual intercourse with Defendant Sauter in *his* office every day.

47.    On half-days, Defendant Sauter instructed Plaintiff Jane Doe to stay in for lunch, so Defendant Sauter could have sex with her.

48.    Plaintiff Jane Doe feared that if she rejected Defendant Sauter's demands for sex she would lose her job.

49.    In their sexual relationship, Defendant Sauter was the dominant partner and Plaintiff Jane Doe played the submissive role.

50.    Sex with Defendant Sauter was often violent.

51.     In December of 2024, Plaintiff Jane Doe and her children moved into a new apartment.

52.     Defendant Sauter helped Plaintiff Jane Doe move in.

53.     Defendant Sauter had sex with Plaintiff Jane Doe at school and, occasionally, in her new apartment, depending on Defendant Sauter's preference.

54.     On December 7, 2024, Defendant Sauter told Jane Doe: ***"Let's get this straight because I know the higher-ups in this district and I'm gonna get what I want" showcasing his power and influence over her career.***

55.     On December 8, 2024, Defendant Sauter sent Plaintiff Jane Doe a series of sexually provocative "selfies," including one where Defendant Sauter is holding his erect penis while standing in front of a mirror, commonly referred to as a "Dick Pic." (**Exhibit A**, Sexually Explicit Material Redacted for Filing).

56.     On December 12, 2024, Plaintiff Jane Doe met Defendant Sauter in his office and told him that their relationship was wrong, had caused enormous emotional distress and that she wanted the sexual relationship to end.

57.     Defendant Sauter agreed and "suggested" that Plaintiff Jane Doe date a friend of his.

58.     Feeling helpless, overwhelmed and alone, Plaintiff Jane Doe followed Defendant Sauter's "suggestion" and dated Sauter's friend, which made work even more stressful.

8

59. Defendant Sauter and Plaintiff Jane Doe refrained from sex while she had sex with Defendant Sauter's friend.

60. On June 2, 2025, Plaintiff Jane Doe met Defendant Sauter in his office and told him that she had broken up with his friend.

61. Plaintiff Jane Doe asked Defendant Sauter never to speak about his friend at work.

62. Defendant Sauter dismissed her concern and shifted the conversation to Plaintiff Jane Doe's physical appearance, sexualizing her again.

63. Defendant Sauter asked Plaintiff Jane Doe, ***"Why are you wearing such a low-cut shirt?"***

64. Plaintiff Jane Doe replied: ***"It's not?"***

65. Defendant Sauter said ***"It's bringing back memories."***

66. Plaintiff Jane Doe stood up to leave but Defendant Sauter physically stopped her, breathed down her neck, and bit her ear.

67. The bell rang and Plaintiff Jane Doe left Defendant Sauter's office disturbed, uncertain and confused.

68. The next day, Defendant Sauter came to Plaintiff Jane Doe's classroom, bent her over a desk, placed his hands inside her pants, and proclaimed: ***"Next time I want to loan this pussy out, I'll let you know. This is mine; don't you forget it."***

69.    On June 4, 2025, Plaintiff Jane Doe asked Defendant Sauter for a transfer to a different school to escape the sexually hostile environment created by Defendant Sauter.

70.    Defendant Sauter refused Plaintiff Jane Doe's request for a transfer and explained that he could not afford to lose her. Plaintiff Jane Doe felt helpless and trapped.

71.    Defendant Sauter was promoted to Principal by Defendant KPSS with even more power over Plaintiff Jane Doe and her career.

72.    Plaintiff Jane Doe's anxiety and despair worsened as the new school year approached.

73.    Plaintiff Jane Doe dreaded going back to work for Defendant Principal Sauter.

74.    On August 12, 2025, Plaintiff Jane Doe met with new Millwood Middle School Principal Defendant Sauter in his new office to end the toxic relationship.

75.    Plaintiff Jane Doe told Principal Sauter that she felt conflicted: She could not stay at the school but did not want to leave because she loved her students like her own children.

76.    Defendant Principal Sauter stood, kissed Plaintiff Jane Doe, reached down into her pants and digitally penetrated her vagina.

77.    Every time Plaintiff Jane Doe attempted to end things in person with Defendant Principal Sauter, she left feeling manipulated, confused, and pulled back into something she had told Defendant Sauter she wanted to stop.

78.    On August 21, 2025, Defendant Sauter sent Plaintiff Jane Doe a text message about a school jersey.

79.    The two exchanged sexual text messages and made plans for a rendezvous at Plaintiff Jane Doe's apartment before work the next day.

80.    On August 22, 2025, Defendant Sauter had sex with Plaintiff Jane Doe in her apartment before school.

81.    This was the last time Plaintiff Jane Doe had sex with Defendant Principal Sauter who knew sex with Plaintiff Jane Doe was over.

82.    After the sex stopped, the workplace became even more toxic, oppressive, and unbearable.

83.    Defendant Principal Sauter substantially changed Plaintiff Jane Doe's role and responsibilities without speaking with her, making each day uncertain and more stressful than the last.

84.    Plaintiff Jane Doe's anxiety became so debilitating that she missed days at work to avoid seeing Defendant Principal Sauter who had made her life miserable.

85.    On or about November 10, 2025, Plaintiff Jane Doe sent a text message to Defendant Principal Sauter and begged for a transfer to another school.

11

86.    Defendant Sauter replied that ***"they won't transfer you."***

87.    Defendant Sauter reminded Plaintiff Jane Doe: ***"Your written eval is in 15 days and I don't want to have to non-renew because that would be bad."***

88.    Defendant Sauter asked Plaintiff Jane Doe to resign.

89.    Plaintiff Jane Doe was devastated, vulnerable, alone, and, pressured by Defendant Sauter, reluctantly "resigned."

90.    Afterwards, Plaintiff Jane Doe's life fell apart.

91.    Plaintiff Jane Doe left Michigan for a teaching job at less pay and struggled to rebuild her life.

92.    On May 13, 2026, Plaintiff Jane Doe notified KPSS of Defendant Principal Sauter's predatory sexual conduct.

93.    Defendant KPSS ignored Plaintiff Jane Doe.

94.    Plaintiff Jane Doe's report of *quid pro quo* sexual harassment and hostile environment was not the first time a KPSS Principal had used his authority to coerce sex from a subordinate.

95.    Despite this history, KPSS did not investigate, let alone remedy Defendant Principal Sauter's unlawful sexual conduct.

96.    On May 23, 2026, Plaintiff's counsel notified KPSS of Defendant Sauter's outrageous and unlawful actions.

97.    On or about June 3, 2026, Defendant Principal Sauter quietly resigned as Principal of Millwood Middle School, his wife resigned as a teacher and their child was removed from school.

98.    Plaintiff Jane Doe has contacted the Michigan Department of Civil Rights and the Equal Employment Opportunity Commission (EEOC) to file an appropriate Charge of Discrimination.

## COUNT I

### *QUID PRO QUO* SEXUAL HARASSMENT IN VIOLATION OF THE ELLIOTT LARSEN CIVIL RIGHTS ACT

99.    Plaintiff reasserts each paragraph above word for word.

100.    Defendants Sauter and KPSS are "employers" under Michigan's *Elliott Larsen Civil Rights Act* (*ELCRA*), being *Mich. Comp. Laws. §37. 2100, et seq.*

101.    Plaintiff Jane Doe is an "employee" under *ELCRA*.

102.    Plaintiff Jane Doe was subjected to unwelcome sexual advances, requests for sexual favors, or other conduct or communication of a sexual nature by her boss, Defendant Sauter who used his position of power over Plaintiff Jane Doe to groom her, intimidate her and coerce her for sex.

103.    Among other things, Defendant Sauter grabbed, rubbed, fondled and messaged Plaintiff Jane Doe's feet without permission or consent, pressured her for sex, ordered her to appear before and after school for sex, reminded her of his powerful influence at KPSS, sent unsolicited sexually provocative "selfies"

13

including a pornographic "Dick Pic," "lent" her out for sex, told her that *he* "owned this pussy,"  refused to take "No" for an answer, refused to transfer her to another school so he could control and coerce more sex from Plaintiff Jane Doe; threatened her with a poor evaluation, non-renewal of her contract and constructively discharged her after she stopped having sex with him.

104.   When Plaintiff Jane Doe stopped having sex with him, Defendant Sauter made working conditions intolerable for Plaintiff Jane Doe, refused a second request for a transfer, sent a text message that he that was going to give her a poor job evaluation and not renew her contract with KPSS which ***"would be bad."***

105.   Defendant Sauter used Plaintiff Jane Doe's submission to or rejection of the unwelcome sexual conduct or communication as a factor in decisions affecting the Plaintiff Jane Doe's employment, such as hiring, firing, promotion, transfer, location and/or other terms and conditions of employment. *Mich. Comp. Laws § 37.2103*

106.   The harassment of Plaintiff Jane Doe by Sauter was premised on sex which Defendant Sauter admitted when he told Plaintiff Jane Doe that he hired her because she was *"a baddie."*

107.   Plaintiff Jane Doe's reaction to the harassment impacted a tangible aspect of her compensation, terms, conditions, or privileges of employment, including her constructive discharge.

108. Defendant KPSS is strictly liable for Defendant Sauter's harassment of Plaintiff Jane Doe under the doctrine of *respondeat superior.*

109. As a direct and proximate result of Defendants Sauter's and KPSS's unlawful conduct, Plaintiff Jane Doe suffered economic and non-economic losses including but not limited to, emotional distress, depression, anxiety, humiliation, degradation, reputational harm, fear, despair, dread, loss of the enjoyments of the pleasures of life, lost back pay, lost front pay, lost earning capacity, and other economic and non-economic damages which will continue through and beyond this litigation.

**ACCORDINGLY,** Plaintiff Jane Doe asks this Court to enter Judgment against Defendants Aaron Sauter and KPSS in excess of this Court's jurisdictional limit including compensatory and exemplary damages, statutory costs, fees and interest, all equitable, injunctive, and other relief allowed by law.

## COUNT II

### HOSTILE ENVIRONMENT BASED ON SEX IN VIOLATION OF THE ELLIOTT LARSEN CIVIL RIGHTS ACT

110. Plaintiff Jane Doe reasserts each paragraph above word for word.

111. Plaintiff Jane Doe was subjected to communication or conduct on the basis of sex, as admitted by Defendant Sauter.

15

112.   The unwelcome sexual conduct or communication was intended to, or in fact did, substantially interfere with Plaintiff Jane Doe's employment or created an intimidating, hostile, or offensive work environment.

113.   Defendant KPSS had actual and/or constructive notice of the harassment by Defendant Sauter but failed to investigate Defendant Sauter or take appropriate corrective action to stop Defendant Sauter's predation of female staff.

114.   On information and belief, Defendant Sauter continued to have unlawful sexual relationships with female underlings after he discarded Plaintiff Jane Doe and moved a female employee's office from the back of the school to an officer next to his, which was formerly the Vice Principal's office.

115.   As a direct and proximate result of Defendants Sauter's and KPSS's unlawful conduct, Plaintiff Jane Doe suffered economic and non-economic losses including but not limited to, emotional distress, depression, anxiety, humiliation, degradation, reputational harm, fear, despair, dread, loss of the enjoyments of the pleasures of life, lost back pay, lost front pay, lost earning capacity, and other economic and non-economic damages which will continue through and beyond this litigation.

**ACCORDINGLY,** Plaintiff Jane Doe asks this Court to enter Judgment against Defendants Aaron Sauter and KPSS in excess of this Court's jurisdictional

limit including compensatory and exemplary damages, statutory costs, fees and interest, all equitable, injunctive, and other relief allowed by law.

## COUNT III

### RETALIATION IN VIOLATION OF ELCRA

116. Plaintiff Jane Doe reasserts each paragraph above.

117. Plaintiff engaged in protected activity when she complained to Defendant Sauter about his unlawful conduct, tried to end their relationship, and denied him sex.

118. Defendant Sauter retaliated against Plaintiff Jane Doe when, among other things, he made working conditions unbearable, refused to transfer Plaintiff Jane Doe to another school, threatened her with a poor evaluation and nonrenewal of her contract ***"which would be bad,"*** told her to resign and constructively discharged her.

119. A causal connection exists between Plaintiff Jane Doe's protected activity and the adverse employment actions visited upon her by Defendant Sauter made possible by the authority given him by KPSS, who knew or should have known of Defendant Sauter's sexual exploitation of female staff.

120. As a direct and proximate result of Defendants Sauter's and KPSS's unlawful conduct, Jane Doe suffered economic and non-economic losses including but not limited to, emotional distress, depression, anxiety, humiliation, degradation,

reputational harm, fear, despair, dread, loss of the enjoyments of the pleasures of life, lost back pay, lost front pay, loss of earning capacity, and other economic and non-economic damages which will continue through and beyond this litigation.

**ACCORDINGLY,** Plaintiff Jane Doe asks this Court to enter Judgment against Defendants Aaron Sauter and KPSS in excess of this Court's jurisdictional limit including compensatory and punitive damages, statutory costs, fees and interest, all equitable, injunctive, and other relief allowed by law.

## COUNT IV

### *FIRST AMENDMENT* RETALIATION PURSUANT TO *42 USC §1983* AS TO DEFENDANT AARON SAUTER

121.  Plaintiff Jane Doe reasserts each paragraph above.

122.  The *First Amendment* prohibits government from retaliating against citizens who exercise their *Free Speech* rights, one of which is to object to unlawful conduct and say "No" to authority

123.  Plaintiff Jane Doe spoke out as a citizen on a matter of substantial public importance when she told Defendant Sauter she did not want to have sex with him.

124.  A causal connection exists between Plaintiff Jane Doe's protected activity and the adverse employment actions described herein.

125.  Defendant Sauter retaliated against Plaintiff Jane Doe by, among other things, refused her requests to transfer to another school, unilaterally changed her

18

role and responsibilities, threatened her with a poor evaluation, nonrenewal of her contract "which would be bad" and constructively discharged her.

126. Defendant Sauter's conduct toward Plaintiff Jane Doe would deter a person of ordinary firmness from speaking out.

127. Plaintiff Jane Doe's speech to Defendant Sauter outweighed any competing governmental interest.

128. As a direct and proximate result of Defendants Sauter's unlawful conduct and violation of Plaintiff Jane Doe's clearly established constitutional rights, Jane Doe suffered economic and non-economic losses including but not limited to, emotional distress, depression, anxiety, humiliation, degradation, reputational harm, fear, despair, dread, loss of the enjoyments of the pleasures of life, lost back pay, lost front pay, loss of earning capacity, and other economic and non-economic damages which will continue through and beyond this litigation.

**ACCORDINGLY,** Plaintiff Jane Doe asks this Court to enter Judgment against Defendants Aaron Sauter and KPSS in excess of this Court's jurisdictional limit including compensatory and punitive damages, statutory costs, fees and interest, all equitable, injunctive, and other relief allowed by law.

## COUNT V

### *MONELL* MUNICIPAL LIABILITY AGAINST KPSS FOR DEFENDANT SAUTER'S VIOLATION OF PLAINTIFF JANE DOE'S *FIRST AMENDMENT* FREE SPEECH RIGHTS PURSUANT TO *42 U.S.C. § 1983*

127.   Plaintiff Jane Doe reasserts each paragraph above word for word.

128.   Defendant KPSS is a municipal entity subject to suit under *42 U.S.C. § 1983*.

129.   Plaintiff Jane Doe suffered a deprivation of rights secured by the *First Amendment* to the United States Constitution when Defendant Sauter retaliated against her for refusing to continue having sex with him.

130.   Defendant KPSS, through its deliberate conduct, and indifference was the moving force behind the *First Amendment* violation alleged in Count IV.

131.   Defendant KPSS maintained an official policy, custom, or practice that caused the *First Amendment* violations alleged herein.

132.   KPSS maintained a policy or custom of inadequate training and supervision of its principals and administrators regarding employees' *First Amendment* rights to refuse sexual advances and to speak out against sexual predation by supervisors, co-employees and others.

133.   KPSS failed to train and supervise its principals and administrators on, among other things：  The constitutional rights of employees to refuse unwanted sexual contact; Appropriate boundaries between supervisors and subordinate

20

employees; Recognition and prevention of *quid pro quo* sexual coercion; The prohibition against retaliation for rejecting sexual advances; and, Proper responses to reports of sexual misconduct by supervisors and/or co-employees.

134. The need for training and supervision on these matters was obvious and known to KPSS given that Plaintiff Jane Doe's report was not the first time a Defendant KPSS had been sued because a male Principal had used his authority to coerce sex from a female subordinate.

135. Despite this clear pattern of conduct, Defendant KPSS failed to implement adequate training or supervision policies to prevent future violations.

136. Defendant KPSS's failure to train and supervise amounted to deliberate indifference to the constitutional rights of its employees, including but not limited to Plaintiff Jane Doe.

137. The inadequate training and supervision was the moving force behind Defendant Sauter's retaliation against Plaintiff Jane Doe for exercising her *First Amendment* rights.

138. In the alternative, Defendant KPSS maintained a custom of tolerance and acquiescence to *First Amendment* violations by its principals and administrators.

139. There existed a clear and persistent pattern of Defendant KPSS principals using their authority to coerce sexual relationships with subordinate

21

employees and retaliating against those employees when they refused or attempted to end such relationships.

140. Defendant KPSS had actual or constructive notice of this pattern of constitutional violations through Plaintiff Jane Doe's May 13, 2026 report and prior similar reports.

141. Despite notice of Defendant Sauter's predatory conduct and retaliation, Defendant KPSS failed to investigate or take corrective action.

142. Defendant KPSS's failure to investigate or remedy Defendant Sauter's conduct constituted tacit approval of the unconstitutional conduct, such that Defendant KPSS's deliberate indifference and failure to act amounted to an official policy of inaction.

143. Defendant KPSS's custom of tolerance and inaction was the moving force and direct causal link in the *First Amendment* deprivation suffered by Plaintiff Jane Doe.

144. In further alternative, Defendant KPSS ratified Defendant Sauter's unconstitutional retaliation against Plaintiff Jane Doe.

145. Upon receiving notice of Defendant Sauter's conduct on May 13, 2026 and May 23, 2026, officials with final policymaking authority for Defendant KPSS failed to take any disciplinary action against Defendant Sauter.

146. KPSS permitted Defendant Sauter to quietly resign on or about June 3, 2026 without investigation, discipline, notice to the community or any remedial measures to address the harm to Plaintiff Jane Doe and other female teachers, parents, and others.

147. By permitting Defendant Sauter to resign without consequence after being notified of his unconstitutional conduct, Defendant KPSS ratified the *First Amendment* violation.

148. The ratification by Defendant KPSS officials with final policymaking authority was the moving force behind Plaintiff Jane Doe's injury.

149. As a direct and proximate result of Defendant KPSS's policies, customs, practices, inadequate training and supervision, deliberate indifference, and/or ratification of constitutional violations, Jane Doe suffered economic and non-economic losses including but not limited to, emotional distress, depression, anxiety, humiliation, degradation, reputational harm, fear, despair, dread, loss of the enjoyments of the pleasures of life, lost back pay, lost front pay, lost earning capacity, and other economic and non-economic damages will continue through and beyond this litigation.

**ACCORDINGLY,** Plaintiff Jane Doe asks this Court to enter Judgment against Defendant KPSS in excess of this Court's jurisdictional limit including

compensatory and punitive damages, statutory costs, fees and interest, all equitable, injunctive, and other relief allowed by law.

Respectfully submitted,

_s/ Joel B. Sklar_

Joel B. Sklar (P38338)
500 Griswold, Suite 2450
Detroit, MI 48226
313-963-4529
Attorney for Plaintiff
Dated:  July 7, 2026    Joel@joelbsklarlaw.com

## **DEMAND FOR JURY TRIAL**

Plaintiff Jane Doe demands a jury trial for this cause of action.

Respectfully submitted,

_s/ Joel B. Sklar_

Joel B. Sklar (P38338)
500 Griswold, Suite 2450
Detroit, MI 48226
313-963-4529
Attorney for Plaintiff
Dated:  July 7, 2026    Joel@joelbsklarlaw.com