UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

JORDAN KELLEY, an individual and citizen of the State of Florida,

Plaintiff,

v

KALAMAZOO PUBLIC SCHOOL SYSTEM, a Michigan Public School and AARON SAUTER, a citizen of the State of Michigan, in his individual and official capacity,

Defendants.

Case No: 1:26-cv-02013

Hon. Jane M. Beckering

---

**DEFENDANT AARON SAUTER'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES AND RELIANCE ON JURY DEMAND**

NOW COMES Defendant Aaron Sauter, by and through his attorneys, Foster, Swift, Collins & Smith, P.C., states as follows for his Answer to the First Amended Complaint of Plaintiff Jordan Kelley:

1. Plaintiff Jordan Kelley is a resident and citizen of the State of Florida.

**ANSWER: Mr. Sauter lacks knowledge or information sufficient to form a belief as the truth of the allegations of this paragraph, and therefore neither admits nor denies the same, leaving Plaintiff to her proofs.**

2. Defendant Aaron Sauter (Sauter) resides and/or transacts business in Kalamazoo, Michigan which is in this Judicial District. He is a citizen of the State of Michigan. He is being sued in his individual capacity.

**ANSWER: Mr. Sauter admits that he resides in this judicial district, and is a citizen of the State of Michigan.**

3. The Kalamazoo Public School System (KPSS) is located and transacts business in this Judicial District.

**ANSWER: No response is required of Mr. Sauter to the allegations of this paragraph, as the allegations pertain solely to another Defendant, Kalamazoo Public Schools ("KPS," incorrectly identified in Plaintiff's Amended Complaint as KPSS).**

4. Defendant Sauter and KPSS are not entitled to any governmental or other immunity from Plaintiff Jordan Kelley's suit.

**ANSWER: This paragraph does not contain any allegations of fact, but merely sets forth Plaintiff's own self-serving conclusions of law, to which no response is required. To the extent a response may be required by this Honorable Court, Mr. Sauter denies the same as untrue.**

5. Qualified immunity does not apply to Defendant Sauter because any reasonable person would know that he violated Plaintiff Jordan Kelley's clearly established *First Amendment*

*Free Speech* rights when he refused to take "No" for an answer, physically imposed himself on Plaintiff Jordan Kelley, and retaliated against her.

**ANSWER: This paragraph does not contain any allegations of fact, but merely sets forth Plaintiff's own self-serving conclusions of law, to which no response is required. To the extent a response may be required by this Honorable Court, Mr. Sauter denies the same as untrue. Further responding, Mr. Sauter denies the conclusory allegations that he violated Plaintiff's "First Amendment Free Speech" rights; denies that he "refused to take 'No' for an answer," and denies that he "physically imposed himself on Plaintiff" or retaliated against her in any way.**

6. Venue is proper in this Court because all of the actions, events, transactions, and occurrences which form the gravamen of this action took place in this Judicial District. *28 U.S.C. §1391*

**ANSWER: This paragraph does not set forth any allegations of fact and merely sets forth Plaintiff's own self-serving conclusions of law, to which no response is required. Mr. Sauter denies the alleged actions, events and occurrences alleged herein but otherwise does not contest venue in this Court.**

7. This Court has diversity jurisdiction over this case pursuant to *28 U.S.C. § 1332* because Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000 exclusive of costs, fees, and interest.

**ANSWER: This paragraph does not set forth any allegations of fact and merely sets forth Plaintiff's own self-serving conclusions of law, to which no response is required from Mr. Sauter.**

8. The Court also has original federal question jurisdiction pursuant to *28 U.S.C. § 1331* over Plaintiff Jordan Kelley's constitutional claim and those related to federal statutes.

**ANSWER: This paragraph does not set forth any allegations of fact and merely sets forth Plaintiff's own self-serving conclusions of law, to which no response is required from Mr. Sauter.**

9. The Court has supplemental jurisdiction over Plaintiff Jordan Kelley's state law claims pursuant to *28 U.S.C. §1367*.

**ANSWER: This paragraph does not set forth any allegations of fact and merely sets forth Plaintiff's own self-serving conclusions of law, to which no response is required from Mr. Sauter.**

## FACTUAL ALLEGATIONS

### KPSS MIDDLE SCHOOL PRINCIPAL AARON SAUTER'S COERCED *QUID PRO QUO* SEXUAL RELATIONSHIP WITH SUBORDINATE TEACHER JORDAN KELLEY

10. On December 18, 2023, Plaintiff Jordan Kelley was a teacher at KPSS Milwood Middle School.

**ANSWER: Mr. Sauter lacks knowledge or information sufficient to form a belief as the truth of the allegation that Plaintiff began employment at KPS' Middle School on December 18, 2023, and therefore neither admits nor denies the same, leaving Plaintiff to her proofs. Mr. Sauter denies the allegation that Plaintiff was employed at Milwood Middle School as a "teacher." Further responding, Mr. Sauter states that Plaintiff was not a teacher as that term is generally understood and was not state certified as a teacher at any relevant time. She was employed as an Attendance Interventionist, dealing with truancy matters.**

11. Plaintiff Jordan Kelley attended KPSS as a child and the job was a dream come true.

**ANSWER: Mr. Sauter lacks knowledge or information sufficient to form a belief as the truth of the allegations of this paragraph, and therefore neither admits nor denies the same, leaving Plaintiff to her proofs.**

12. Around that time, KPSS offered a new grant opportunity for employees called "Grow Your Program" which offered a fully funded bachelor's degree in education.

**ANSWER: Mr. Sauter admits that "Grow Your Program" was a program offered through KPSS in and around December 2023. Mr. Sauter lacks knowledge or information sufficient to form a belief as to the details of this program, and therefore neither admits nor denies any allegations regarding the same, leaving Plaintiff to her proofs.**

13. Defendant Sauter personally contacted Plaintiff Jordan Kelley and suggested that she apply because she would be excellent in that role.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue. Further responding, Mr. Sauter states that Plaintiff initially contacted <u>him</u>, and asked Mr. Sauter if she should apply for the Grow Your Program opportunity. In response to Plaintiff's inquiry, Mr. Sauter told her that he thought that she would do well in the program.**

14. Defendant Sauter told Plaintiff that he believed in her, that she had a special way with students and that she could make a meaningful impact.

**ANSWER: Mr. Sauter admits only that he made these statements to Plaintiff solely in response to her questions to him about the Grow Your Program program, and whether he thought she should apply to it. Any remaining allegations of this paragraph are denied.**

15. Defendant Sauter personally contacted his friend Steve Leland who oversaw the program and advocated for Plaintiff Jordan Kelley to be granted a spot.

**ANSWER: Mr. Sauter denies that he contacted Steve Leland to advocate for Plaintiff to be granted a spot in the program. Further responding, Mr. Sauter states that he suggested**

**that Plaintiff contact Steve Leland, and upon information and belief, Plaintiff did so. Mr. Sauter denies any allegation contained in this paragraph that he contacted Steve Leland about Plaintiff's participation in the program or that he actively "advocated" on her behalf.**

16. Plaintiff Jordan Kelley was incredibly grateful. She believed these opportunities were being given to her because she was valued, talented and deserving.

**ANSWER: Mr. Sauter lacks knowledge or information sufficient to form a belief as the truth of the allegations of this paragraph, and therefore neither admits nor denies the same, leaving Plaintiff to her proofs.**

17. Little did Plaintiff Jordan Kelley know that Defendant Sauter was actually grooming her for sex.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue, and denies any allegation or implication of wrongdoing by him with regard to Plaintiff.**

18. In the summer of 2024, Plaintiff Jordan Kelley was offered the Resource Teaching Center (RTC) position by Defendant Sauter without an interview process.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue. Further responding, Mr. Sauter states that Plaintiff wanted to switch to the role in the Resource Teaching Center. It was Plaintiff's idea to seek that position, and was not suggested to her in any way by Mr. Sauter. She wanted to switch to that role because it was a higher paying position. Further responding, Mr. Sauter denies that he "offered" the position to Plaintiff without any interview process. She applied and was interviewed for the position, along with other candidates, by KPS.**

19. Plaintiff Jordan Kelley was proud of herself and believed Defendant Sauter had chosen her because she was the most qualified candidate.

**ANSWER: Mr. Sauter lacks knowledge or information sufficient to form a belief as the truth of the allegations of this paragraph, and therefore neither admits nor denies the same, leaving Plaintiff to her proofs.**

20. Plaintiff Jordan Kelley returned to work in August 2024 in her new position and had already begun coursework toward her bachelor's degree through the district-funded program.

**ANSWER: Mr. Sauter lacks knowledge or information sufficient to form a belief as the truth of the allegations of this paragraph, and therefore neither admits nor denies the same, leaving Plaintiff to her proofs.**

21. Plaintiff Jordan Kelley was hopeful and excited about her future.

**ANSWER: Mr. Sauter lacks knowledge or information sufficient to form a belief as the truth of the allegations of this paragraph, and therefore neither admits nor denies the same, leaving Plaintiff to her proofs.**

22. In September 2024, Plaintiff Jordan Kelley and her husband began having marital difficulty.

**ANSWER: Mr. Sauter lacks knowledge or information sufficient to form a belief as the truth of the allegations of this paragraph, and therefore neither admits nor denies the same, leaving Plaintiff to her proofs.**

23. Plaintiff Jordan Kelley confided in a female co-employee and Defendant Vice Principal Sauter, her immediate supervisor, about her marital struggles and its toll on her mental health.

**ANSWER: In response to the allegations of this paragraph, Mr. Sauter lacks knowledge or information sufficient to form a belief as the truth of the allegation that Plaintiff confided in a female co-employee and, therefore, neither admits nor denies said allegations, leaving Plaintiff to her proofs. Further responding, Mr. Sauter admits that Plaintiff began talking**

**to him about her marital problems in the fall of 2024. Mr. Sauter denies the allegation that he was Plaintiff's "immediate supervisor." The lead principal at Milwood Middle School, Mr. William Hawkins, was Plaintiff's immediate supervisor and performed all of her performance evaluations. Mr. Sauter denies any and all other allegations contained in this paragraph.**

24. Shortly after he learned about her troubled marital struggles, Defendant Sauter began making sexual comments to Plaintiff that made her uncomfortable and confused.

**ANSWER: In the form and manner phrased, Mr. Sauter denies the allegations of this paragraph as untrue. Mr. Sauter denies that he initiated making sexual comments to Plaintiff. On the contrary, Plaintiff initiated such comments and discussions by making sexual innuendo and acting in a flirtatious and aggressively sexual toward Mr. Sauter. Mr. Sauter denies the allegation that he made Plaintiff uncomfortable and confused, as Plaintiff was the person who initiated verbal discussions of a sexual nature with Mr. Sauter.**

25. Defendant Sauter told Plaintiff Jordan Kelley, ***"I knew I wanted to hire you the moment I saw you"*** and ***"I told my friends I hired a baddie."***

**ANSWER: Mr. Sauter denies making the statements attributed to him in this paragraph. Further responding, Mr. Sauter denies that he was the person that "hired" Plaintiff.**

26. Plaintiff Jordan Kelley was hurt. She thought Defendant Sauter had helped her career advance because she displayed hard work, performance, and potential.

**ANSWER: Mr. Sauter lacks knowledge or information sufficient to form a belief as the truth of the allegation that Plaintiff was "hurt," and therefore neither admits nor denies the same, leaving Plaintiff to her proofs. Further responding, Mr. Sauter denies the allegation that he helped her career advance. Mr. Sauter was not responsible for Plaintiff's "career advancement." Mr. Sauter admits that he gave Plaintiff positive feedback regarding what he**

**observed of her job performance. Mr. Sauter denies any and all remaining allegations contained in this paragraph and denies any allegations or implications of wrongdoing by him toward Plaintiff.**

27. Defendant Sauter's remarks triggered painful feelings of Plaintiff Jordan Kelley being sexualized, which she had experienced for years.

**ANSWER: Mr. Sauter lacks knowledge or information sufficient to form a belief as the truth of the allegations of this paragraph, and therefore neither admits nor denies the same, leaving Plaintiff to her proofs.**

28. In October of 2024, Defendant Sauter met Plaintiff Jordan Kelley alone in his office.

**ANSWER: In the form and manner phrased, Mr. Sauter denies the allegations of this paragraph as untrue. Further responding, Mr. Sauter states that Plaintiff often came into his office on her own accord, which was not unusual, and something that Plaintiff did frequently. Mr. Sauter denies any and all remaining allegations contained in this paragraph and denies any allegation or implication of wrongdoing by him toward Plaintiff.**

29. During the meeting and without asking her for permission or consent, Defendant Sauter grabbed Jordan Kelley's feet, removed her shoes, messaged her feet, and pulled each toe one by one until each cracked.

**ANSWER: Mr. Sauter denies that he grabbed Plaintiff's feet without asking her for permission or consent. On the contrary, Plaintiff placed her feet on Mr. Sauter's lap intentionally, to initiate further contact and physical connection with him. Plaintiff took her own shoes off and put her bare feet on Mr. Sauter. Mr. Sauter admits that further physical contact occurred after Plaintiff initiated this, and states that this contact was mutual and consensual, and both he and Plaintiff were laughing about it. Mr. Sauter denies any and all**

**remaining allegations contained in this paragraph and denies any allegations of wrongdoing toward Plaintiff.**

30. Defendant Sauter was Plaintiff Jordan Kelley's direct report and someone she saw every school day. Defendant Sauter was a married man whose wife taught at KPSS and whose daughter attended KPSS.

**ANSWER: Mr. Sauter denies the allegation that Plaintiff was his direct report. Mr. Sauter admits that he and Plaintiff saw each other at school nearly every day. Mr. Sauter admits that his wife was employed by KPS and his daughter attended KPS. Mr. Sauter denies any remaining allegations of this paragraph and denies any allegation or implication of wrongdoing by him toward Plaintiff.**

31. Plaintiff Jordan Kelley was stunned, confused, intimidated and uncertain what to do. She said nothing.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue. Plaintiff initiated the intimacy and further contact by taking her shoes off and intentionally placing her feet on Mr. Sauter's lap. Plaintiff enjoyed this physical contact and intimacy and was laughing about it and encouraging it.**

32. Defendant Sauter had helped shape and advance Plaintiff Jordan Kelley's career path, advocated for her, and had tremendous influence over her employment and career as teacher.

**ANSWER: Mr. Sauter denies that he helped shape and advance Plaintiff's career path, advocated for her or had tremendous influence over her employment and career. These allegations are untrue, and Mr. Sauter denies any allegation or implication of wrongdoing by him toward Plaintiff.**

33. Plaintiff Jordan Kelley was terrified of displeasing Defendant Sauter and losing everything she had worked so hard for.

**ANSWER: Mr. Sauter lacks knowledge or information sufficient to form a belief as the truth of the allegations of this paragraph relating to Plaintiff's state of mind, and therefore neither admits nor denies the same, leaving Plaintiff to her proofs. Further responding, Mr. Sauter denies as untrue any allegation or implication that he did or said anything to cause Plaintiff to feel "terrified" of displeasing him or to implicate that she would suffer adverse consequences as a result.**

34. Defendant Sauter "suggested" that he and Plaintiff Jordan Kelley meet alone more often.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue. Further responding, Mr. Sauter states that <u>Plaintiff</u> was the one who suggested that they should meet alone.**

35. Plaintiff Jordan Kelley did as she was instructed and met privately in Defendant Sauter's office.

**ANSWER: Mr. Sauter denies that he instructed Plaintiff to do anything. Mr. Sauter admits that he and Plaintiff met privately in his office, and that they engaged in a sexual relationship, but this relationship was mutual and consensual.**

36. "Meetings" in Defendant Sauter's office increased with frequency and became sexually intimate.

**ANSWER: In response to the allegations of this paragraph, Mr. Sauter admits that he and Plaintiff engaged in a sexual relationship and admits that he and Plaintiff were sexually intimate in his office. Further responding, Mr. Sauter states that this relationship was mutual and consensual. Mr. Sauter further states that Plaintiff frequently initiated their meeting up, and suggested meeting at his office early, often telling Mr. Sauter what time she would be there.**

37. All of the sexual contact between Plaintiff Jordan Kelley and her boss always occurred in *his* office at the middle school.

**ANSWER: The allegations of this paragraph are denied as untrue. Mr. Sauter admits to having a sexual relationship with Plaintiff and that this sexual relationship was mutual and consensual. Mr. Sauter denies that all of the sexual contact between he and Plaintiff occurred in his office at the middle school. They met at her apartment as well, which was suggested by her. Mr. Sauter further denies that he was Plaintiff's "boss."**

38. Defendant Sauter and Plaintiff Jordan Kelley exchanged photographs and "silly reels" on Instagram.

**ANSWER: Mr. Sauter admits that during his sexual relationship with Plaintiff that both he and Plaintiff exchanged photographs and reels on Instagram with one another. These exchanges were mutual and initiated both by him and her, and they were not unwanted or objected to.**

39. During school, Defendant Sauter visited Plaintiff Jordan Kelley when she was also in the school's RTC, grabbed her, pinned her up against the wall, kissed her neck, caressed her body, and left.

**ANSWER: In the form and manner phrased, Mr. Sauter denies the allegations of this paragraph as untrue. Further responding, Mr. Sauter states that Plaintiff would often tell him that no one was in the RTC and Plaintiff would ask Mr. Sauter to come to the RTC and asked him to touch her and to do sexually explicit things to her in the RTC room.**

40. In November of 2024, Defendant Sauter instructed Plaintiff Jordan Kelley to arrive at school early every day.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue.**

41. Plaintiff Jordan Kelley did as her boss ordered.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue. Further responding, Mr. Sauter states that he was not Plaintiff's boss and did not order her to do anything.**

42. After she arrived early at school, Defendant Sauter would meet alone with Plaintiff Jordan Kelley in *his* office.

**ANSWER: In the form and manner phrased, the allegations of this paragraph are denied as untrue. Further responding, Mr. Sauter states that during their mutual and consensual sexual relationship, he and Plaintiff would sometimes meet early in his office. Mr. Sauter denies as untrue any allegation that he directed Plaintiff to arrive early. Plaintiff met with Mr. Sauter in his office of her own volution and at her own initiative.**

43. Defendant Sauter would prop Plaintiff Jordan Kelley up on his desk and perform oral sex.

**ANSWER: In the form and manner phrased, the allegations of this paragraph are denied as untrue. Further responding, Mr. Sauter admits that he and Plaintiff were engaged in a mutual, consensual, sexual relationship and that they performed certain sexual acts in his office. Mr. Sauter denies any allegation or implication that these rendezvous were either nonconsensual or unwelcome.**

44. When he was done, Plaintiff Jordan Kelley would give Defendant Sauter oral sex.

**ANSWER: In the form and manner phrased, the allegations of this paragraph are denied as untrue. Further responding, Mr. Sauter admits that he and Plaintiff were engaged in a mutual, consensual sexual relationship and that they performed certain sexual acts in his office. Mr. Sauter denies any allegation that these rendezvous were either nonconsensual or unwelcome.**

45. These sexual encounters took place before school started, after school ended and sometimes both on the same day, depending on what Defendant Sauter wanted.

**ANSWER: In the form and manner phrased, Mr. Sauter denies that allegations of this paragraph as untrue. Further responding, Mr. Sauter states that he and Plaintiff were engaged in a mutual, consensual sexual relationship and that they engaged in that sexual relationship at Milwood Middle School. Mr. Sauter denies the allegation that their sexual relationship depended on what he said or wanted. Their sexual relationship was entirely mutual and consensual.**

46. Plaintiff Jordan Kelley had sexual intercourse with Defendant Sauter in *his* office every day.

**ANSWER: Mr. Sauter denies the allegation that he and Plaintiff had sexual intercourse in his office every day.**

47. On half-days, Defendant Sauter instructed Plaintiff Jordan Kelley to stay in for lunch, so Defendant Sauter could have sex with her.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue.**

48. Plaintiff Jordan Kelley feared that if she rejected Defendant Sauter's demands for sex she would lose her job.

**ANSWER: Mr. Sauter lacks knowledge or information sufficient to form a belief as the truth of the allegations of this paragraph relating to Plaintiff's state of mind, and therefore neither admits nor denies the same, leaving Plaintiff to her proofs. Mr. Sauter denies as untrue any allegation or implication that he made "demands for sex," or that he did or said anything to make Plaintiff believe she would lose her job or otherwise suffer any adverse employment action.**

49. In their sexual relationship, Defendant Sauter was the dominant partner and Plaintiff Jordan Kelley played the submissive role.

**ANSWER: The allegations of this paragraph are denied as untrue. Further responding, Mr. Sauter admits that he and Plaintiff had a sexual relationship and that it was mutual and completely consensual and equally initiated by both Mr. Sauter and Plaintiff at various times.**

50. Sex with Defendant Sauter was often violent.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue. Further responding, Mr. Sauter states that he and Plaintiff did engage in a mutual and fully consensual sexual relationship and any and all physical contact or other sexual acts between them was at all times fully consensual and never unwelcome or unwanted. Sexual contact of all types was mutually initiated and consented to by both Mr. Sauter and Plaintiff.**

51. In December of 2024, Plaintiff Jordan Kelley and her children moved into a new apartment.

**ANSWER: Mr. Sauter admits that in December 2024 Plaintiff and her children moved into a new apartment.**

52. Defendant Sauter helped Plaintiff Jordan Kelley move in.

**ANSWER: Mr. Sauter admits that he helped Plaintiff move in to her new apartment in December of 2024.**

53. Defendant Sauter had sex with Plaintiff Jordan Kelley at school and, occasionally, in her new apartment, depending on Defendant Sauter's preference.

**ANSWER: In the form and manner phrased, Mr. Sauter denies the allegations of this paragraph as untrue. Further responding, Mr. Sauter admits that he and Plaintiff engaged in a mutual and fully consensual sexual relationship, that they had consensual sex at school**

**and also in her new apartment. Mr. Sauter denies as untrue the allegation that anything regarding their relationship depended on his preference or the allegation that he was dominant in the relationship.**

54. On December 7, 2024, Defendant Sauter told Jordan Kelley: ***"Let's get this straight because I know the higher-ups in this district and I'm gonna get what I want" showcasing his power and influence over her career.***

**ANSWER: The allegations of this paragraph are denied as untrue. Mr. Sauter denies stating the words attributed to him in this paragraph and denies that he had "power and influence" over Plaintiff's career.**

55. On December 8, 2024, Defendant Sauter sent Plaintiff Jordan Kelley a series of sexually provocative "selfies," including one where Defendant Sauter is holding his erect penis while standing in front of a mirror, commonly referred to as a "Dick Pic." (**Exhibit A**, Sexually Explicit Material Redacted for Filing).

**ANSWER: In response to the allegations of this paragraph, Mr. Sauter admits sending the photos attached as Exhibit A to Plaintiff's Complaint to Plaintiff at her request. Said photographs speak for themselves. Further responding, Mr. Sauter states that Plaintiff also sent him several sexually explicit photos of herself as part of their mutual and consensual relationship.**

56. On December 12, 2024, Plaintiff Jordan Kelley met Defendant Sauter in his office and told him that their relationship was wrong, had caused enormous emotional distress and that she wanted the sexual relationship to end.

**ANSWER: In response to the allegations of this paragraph, Mr. Sauter admits that on or about December 12, 2024, Plaintiff told him that she wanted to end their relationship. Further responding, Mr. Sauter states that Plaintiff wanted the relationship to end because**

**she accused him of sleeping with other women and was very jealous. Mr. Sauter denies as untrue the allegations that Plaintiff told him that their relationship was wrong and/or had caused her enormous emotional distress.**

57. Defendant Sauter agreed and "suggested" that Plaintiff Jordan Kelley date a friend of his.

**ANSWER: In response to the allegations of this paragraph, Mr. Sauter admits that he agreed that their relationship should end, but denies as untrue the allegation that he suggested that Plaintiff date a friend of his at that time.**

58. Feeling helpless, overwhelmed and alone, Plaintiff Jordan Kelley followed Defendant Sauter's "suggestion" and dated Sauter's friend, which made work even more stressful.

**ANSWER: In response to the allegations of this paragraph, Mr. Sauter admits only that the sexual relationship with Plaintiff ended in December 2024 and that he became aware she started dating an acquaintance of his after that. Mr. Sauter denies that he suggested that Plaintiff date his friend and denies any and all other allegations contained in this paragraph as untrue.**

59. Defendant Sauter and Plaintiff Jordan Kelley refrained from sex while she had sex with Defendant Sauter's friend.

**ANSWER: In the form and manner phrased, Mr. Sauter denies the allegations of this paragraph as untrue. Mr. Sauter states that in December 2024, his sexual relationship with Plaintiff ended, and he further admits that he became aware that Plaintiff began dating an acquaintance of his. Mr. Sauter denies as untrue the allegation or implication that he and Plaintiff merely "refrained from sex," and denies any and all remaining allegations of this paragraph as untrue.**

60. On June 2, 2025, Plaintiff Jordan Kelley met Defendant Sauter in his office and told him that she had broken up with his friend.

**ANSWER: In response to the allegations of this paragraph, Mr. Sauter admits that on or about June 2, 2025, Plaintiff came into his office and told him that she had broken up with his acquaintance. Mr. Sauter denies as untrue any and all remaining allegations contained in this paragraph.**

61. Plaintiff Jordan Kelley asked Defendant Sauter never to speak about his friend at work.

**ANSWER: In response to the allegations of this paragraph, Mr. Sauter admits that Plaintiff asked him not to speak about his friend at work.**

62. Defendant Sauter dismissed her concern and shifted the conversation to Plaintiff Jordan Kelley's physical appearance, sexualizing her again.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue.**

63. Defendant Sauter asked Plaintiff Jordan Kelley, ***"Why are you wearing such a low-cut shirt?"***

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue and denies making the statement attributed to him.**

64. Plaintiff Jordan Kelley replied: ***"It's not?"***

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue.**

65. Defendant Sauter said ***"It's bringing back memories."***

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue and denies making the statement attributed to him.**

66. Plaintiff Jordan Kelley stood up to leave but Defendant Sauter physically stopped her, breathed down her neck, and bit her ear.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue and denies initiating any physical contact with Plaintiff whatsoever.**

67. The bell rang and Plaintiff Jordan Kelley left Defendant Sauter's office disturbed, uncertain and confused.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue.**

68. The next day, Defendant Sauter came to Plaintiff Jordan Kelley's classroom, bent her over a desk, placed his hands inside her pants, and proclaimed: ***"Next time I want to loan this pussy out, I'll let you know. This is mine; don't you forget it."***

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue; denies touching Plaintiff in any manner whatsoever, and denies making the statement attributed to him in this paragraph.**

69. On June 4, 2025, Plaintiff Jordan Kelley asked Defendant Sauter for a transfer to a different school to escape the sexually hostile environment created by Defendant Sauter.

**ANSWER: In response to the allegations of this paragraph, Mr. Sauter admits that Plaintiff talked to him about wanting to transfer to a different location after the termination of their prior sexual relationship. Mr. Sauter denies that Plaintiff asked him to arrange for a transfer. Mr. Sauter denies that he had the authority or ability to initiate or approve any transfer in his position. Further responding, Mr. Sauter states that he told Plaintiff to talk to the KPS Human Resources Department if she wanted to explore the possibility of a transfer to a different location. Mr. Sauter denies as untrue any allegation or implication of a "sexually hostile environment" created by him.**

70. Defendant Sauter refused Plaintiff Jordan Kelley's request for a transfer and explained that he could not afford to lose her. Plaintiff Jordan Kelley felt helpless and trapped.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue. Further responding, Mr. Sauter denies that he had authority or power to initiate or approve a transfer and denies that he refused any request for a transfer by Plaintiff. As noted above, he explained to her that she needed to talk to the Human Resources Department and advised her to do so. Mr. Sauter denies as untrue any and all remaining allegations of this paragraph.**

71. Defendant Sauter was promoted to Principal by Defendant KPSS with even more power over Plaintiff Jordan Kelley and her career.

**ANSWER: In response to the allegations of this paragraph, Mr. Sauter admits only that he was promoted to the position of Principal. Mr. Sauter denies as untrue any and all remaining allegations of this paragraph and denies any allegations or implications of wrongdoing by him toward Plaintiff.**

72. Plaintiff Jordan Kelley's anxiety and despair worsened as the new school year approached.

**ANSWER: Mr. Sauter lacks knowledge or information sufficient to form a belief as the truth of the allegations of this paragraph, and therefore neither admits nor denies the same, leaving Plaintiff to her proofs.**

73. Plaintiff Jordan Kelley dreaded going back to work for Defendant Principal Sauter.

**ANSWER: Mr. Sauter lacks knowledge or information sufficient to form a belief as the truth of the allegations of this paragraph, and therefore neither admits nor denies the same, leaving Plaintiff to her proofs.**

74. On August 12, 2025, Plaintiff Jordan Kelley met with new Millwood Middle School Principal Defendant Sauter in his new office to end the toxic relationship.

**ANSWER: In response to the allegations of this paragraph, Mr. Sauter admits that Plaintiff came to his office or or about August 12, 2025. Mr. Sauter denies that the purpose**

**of this meeting was to "end the toxic relationship." Further responding, Mr. Sauter states that his prior sexual relationship with Plaintiff had already ended in December of 2024.**

75. Plaintiff Jordan Kelley told Principal Sauter that she felt conflicted: She could not stay at the school but did not want to leave because she loved her students like her own children.

**ANSWER: In the form and manner phrased, Mr. Sauter denies the allegations of this paragraph as untrue. Further responding, Mr. Sauter admits that he and Plaintiff engaged in a conversation but denies that the conversation occurred in the manner alleged by Plaintiff in this paragraph. During this conversation, Plaintiff was pulling down her shirt and acting in an overtly sexual way toward Mr. Sauter. She said that she wanted to show him a "new trick," and described graphic sexual acts that she wanted to perform with him.**

76. Defendant Principal Sauter stood, kissed Plaintiff Jordan Kelley, reached down into her pants and digitally penetrated her vagina.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue. Further responding, Mr. Sauter states that he did not initiate any contact with Plaintiff at this time. She came behind his desk and kneeled on the ground. She said, "it's okay, no one can see me here." Further responding, Mr. Sauter admits that following these actions and statements of Plaintiff, he did have physical contact with Plaintiff of a sexual nature.**

77. Every time Plaintiff Jordan Kelley attempted to end things in person with Defendant Principal Sauter, she left feeling manipulated, confused, and pulled back into something she had told Defendant Sauter she wanted to stop.

**ANSWER: Mr. Sauter lacks knowledge or information sufficient to form a belief as the truth of the allegations of this paragraph relating to Plaintiff's state of mind, and therefore neither admits nor denies the same, leaving Plaintiff to her proofs. Mr. Sauter denies that Plaintiff attempted to end things in person and denies any allegation or implication that he**

**manipulated or confused Plaintiff, or forced her to continue any activity that she did not want to occur.**

78. On August 21, 2025, Defendant Sauter sent Plaintiff Jordan Kelley a text message about a school jersey.

**ANSWER: In the form and manner phrased, the allegations of this paragraph are denied as untrue. Further responding, Mr. Sauter admits sending a text message about a school jersey on or about August 21, 2025; however, that text message was not sent merely to Plaintiff, but was sent to all staff at Milwood Middle School.**

79. The two exchanged sexual text messages and made plans for a rendezvous at Plaintiff Jordan Kelley's apartment before work the next day.

**ANSWER: In the form and manner phrased, Mr. Sauter denies the allegations of this paragraph as untrue. Further responding, Mr. Sauter states that Plaintiff sent numerous sexual text messages to him and was begging Mr. Sauter to come to her apartment before work the next day.**

80. On August 22, 2025, Defendant Sauter had sex with Plaintiff Jordan Kelley in her apartment before school.

**ANSWER: In response to the allegations of this paragraph, Mr. Sauter admits that on or about August 22, 2025, he engaged in sexual relations with Plaintiff at her apartment prior to the start of school.**

81. This was the last time Plaintiff Jordan Kelley had sex with Defendant Principal Sauter who knew sex with Plaintiff Jordan Kelley was over.

**ANSWER: In the form and manner phrased, Mr. Sauter denies the allegations of this paragraph as untrue and denies any allegations of wrongdoing toward Plaintiff. Further**

**responding, Mr. Sauter admits that the incident described above, on or about August 22, 2025, was the last time that he and Plaintiff engaged in sexual relations.**

82. After the sex stopped, the workplace became even more toxic, oppressive, and unbearable.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue and denies any allegation or implication that the workplace was ever toxic, oppressive or unbearable. Further responding, Mr. Sauter states that subsequent to August 2025, Plaintiff was having issues with absenteeism at work.**

83. Defendant Principal Sauter substantially changed Plaintiff Jordan Kelley's role and responsibilities without speaking with her, making each day uncertain and more stressful than the last.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue. Further responding, Mr. Sauter states that he was not responsible for setting Plaintiff's role and responsibilities at work. At that time, a new Assistant Principal in charge of behavior was hired and that Assistant Principal was responsible for Plaintiff's role and responsibilities as RTC resource teacher. Further, the Assistant Principal in charge of behavior advised Mr. Sauter that Plaintiff was having significant absenteeism and other performance issues in her job.**

84. Plaintiff Jordan Kelley's anxiety became so debilitating that she missed days at work to avoid seeing Defendant Principal Sauter who had made her life miserable.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue and denies any allegation that he made Plaintiff's life miserable.**

85. On or about November 10, 2025, Plaintiff Jordan Kelley sent a text message to Defendant Principal Sauter and begged for a transfer to another school.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue and denies that Plaintiff sent a text message as described in this paragraph. Further responding, Mr. Sauter states that he had previously talked to Plaintiff and advised her that he was not responsible for transfers and that she would need to talk to the Human Resources Department.**

86. Defendant Sauter replied that ***"they won't transfer you."***

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue.**

87. Defendant Sauter reminded Plaintiff Jordan Kelley: ***"Your written eval is in 15 days and I don't want to have to non-renew because that would be bad."***

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue.**

88. Defendant Sauter asked Plaintiff Jordan Kelley to resign.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue.**

89. Plaintiff Jordan Kelley was devastated, vulnerable, alone, and, pressured by Defendant Sauter, reluctantly "resigned."

**ANSWER: Mr. Sauter lacks knowledge or information sufficient to form a belief as the truth of the allegations of this paragraph relating to Plaintiff's state of mind, and therefore neither admits nor denies the same, leaving Plaintiff to her proofs. Further responding, Mr. Sauter denies that he "pressured" Plaintiff to resign in any way.**

90. Afterwards, Plaintiff Jordan Kelley's life fell apart.

**ANSWER: Mr. Sauter lacks knowledge or information sufficient to form a belief as the truth of the allegations of this paragraph, and therefore neither admits nor denies the same, leaving Plaintiff to her proofs.**

91. Plaintiff Jordan Kelley left Michigan for a teaching job at less pay and struggled to rebuild her life.

**ANSWER: Mr. Sauter lacks knowledge or information sufficient to form a belief as the truth of the allegations of this paragraph, and therefore neither admits nor denies the same, leaving Plaintiff to her proofs.**

92. On May 13, 2026, Plaintiff Jordan Kelley notified KPSS of Defendant Principal Sauter's predatory sexual conduct.

**ANSWER: Mr. Sauter lacks knowledge or information sufficient to form a belief as the truth of the allegations of this paragraph, and therefore neither admits nor denies the same, leaving Plaintiff to her proofs. Mr. Sauter denies that he engaged in any "predatory sexual conduct."**

93. Defendant KPSS ignored Plaintiff Jordan Kelley.

**ANSWER: No response to the allegations of this paragraph is required from Mr. Sauter as the allegations pertain solely to Co-Defendant KPS. To the extent an answer may be required, Mr. Sauter denies the allegations as untrue.**

94. Plaintiff Jordan Kelley's report of *quid pro quo* sexual harassment and hostile environment was not the first time a KPSS Principal had used his authority to coerce sex from a subordinate.

**ANSWER: No response to the allegations of this paragraph is required from Mr. Sauter as the allegations pertain solely to Co-Defendant KPS. To the extent an answer may be required, Mr. Sauter denies the allegations as untrue.**

95. Despite this history, KPSS did not investigate, let alone remedy Defendant Principal Sauter's unlawful sexual conduct.

**ANSWER: No response to the allegations of this paragraph is required from Mr. Sauter as the allegations pertain solely to Co-Defendant KPS. To the extent an answer may be**

**required, Mr. Sauter denies the allegations as untrue and denies any "unlawful sexual conduct" by him.**

96. On May 23, 2026, Plaintiff's counsel notified KPSS of Defendant Sauter's outrageous and unlawful actions.

**ANSWER: Mr. Sauter lacks knowledge or information sufficient to form a belief as the truth of the allegations of this paragraph regarding Plaintiff's counsel's conduct, and therefore neither admits nor denies the same, leaving Plaintiff to her proofs. Mr. Sauter denies as untrue any allegation that he engaged in "outrageous" or "unlawful" actions.**

97. On or about June 3, 2026, Defendant Principal Sauter quietly resigned as Principal of Millwood Middle School, his wife resigned as a teacher and their child was removed from school.

**ANSWER: In response to the allegations of this paragraph, Mr. Sauter admits only that he resigned as Principal of Milwood Middle School. Mr. Sauter denies the remaining allegations and implications of this paragraph because they are untrue.**

98. Plaintiff Jordan Kelley has contacted the Michigan Department of Civil Rights and the Equal Employment Opportunity Commission (EEOC) to file an appropriate Charge of Discrimination.

**ANSWER: Mr. Sauter lacks knowledge or information sufficient to form a belief as the truth of the allegations of this paragraph, and therefore neither admits nor denies the same, leaving Plaintiff to her proofs. Mr. Sauter denies any allegations of discrimination or retaliation by Plaintiff.**

## COUNT I

## *QUID PRO QUO* SEXUAL HARASSMENT IN VIOLATION OF THE ELLIOTT LARSEN CIVIL RIGHTS ACT

99. Plaintiff reasserts each paragraph above word for word.

**ANSWER: In response to paragraph 99, Mr. Sauter restates and incorporates by reference his responses to paragraphs 1 through 98 above as if fully set forth herein.**

100. Defendants Sauter and KPSS are "employers" under Michigan's *Elliott Larsen Civil Rights Act (ELCRA)*, being *Mich. Comp. Laws. §27.2100, et seq.*

**ANSWER: This paragraph does not contain any factual allegations but merely sets forth Plaintiff's own self-serving legal conclusions to which no response is required.**

101. Plaintiff Jordan Kelley is an "employee" under ELCRA.

**ANSWER: This paragraph does not contain any factual allegations but merely sets forth Plaintiff's own self-serving legal conclusions to which no response is required.**

102. Plaintiff Jordan Kelley was subjected to unwelcome sexual advances, requests for sexual favors, or other conduct or communication of a sexual nature by her boss, Defendant Sauter who used his position of power over Plaintiff Jordan Kelley to groom her, intimidate her and coerce her for sex.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue.**

103. Among other things, Defendant Sauter grabbed, rubbed, fondled and messaged Plaintiff Jordan Kelley's feet without permission or consent, pressured her for sex, ordered her to appear before and after school for sex, reminded her of his powerful influence at KPSS, sent unsolicited sexually provocative "selfies" including a pornographic "Dick Pic," "lent" her out for sex, told her that *he* "owned this pussy," refused to take "No" for an answer, refused to transfer her to another school so he could control and coerce more sex for Plaintiff Jordan Kelley;

threatened her with a poor evaluation, non-renewal of her contract and constructively discharged her after she stopped having sex with him.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue.**

104. When Plaintiff Jordan Kelley stopped having sex with him, Defendant Sauter made working conditions intolerable for Plaintiff Jordan Kelley, refused a second request for a transfer, sent a text message that he that was going to give her a poor job evaluation and not renew her contract with KPSS which ***"would be bad."***

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue.**

105. Defendant Sauter used Plaintiff Jordan Kelley's submission to or rejection of the unwelcome sexual conduct or communication as a factor in decisions affecting the Plaintiff Jordan Kelley's employment, such as hiring, firing, promotion, transfer, location and/or other terms and conditions of employment. *Mich. Comp. Laws § 37.2103*

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue.**

106. The harassment of Plaintiff Jordan Kelley by Sauter was premised on sex with Defendant Sauter admitted when he told Plaintiff Jordan Kelley that he hired her because she was *"a baddie."*

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue.**

107. Plaintiff Jordan Kelley's reaction to the harassment impacted a tangible aspect of her compensation, terms, conditions, or privileges of employment, including her constructive discharge.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue.**

108. Defendant KPSS is strictly liable for Defendant Sauter's harassment of Plaintiff Jordan Kelley under the doctrine of *respondeat superior.*

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue.**

109. As a direct and proximate result of Defendant Sauter's and KPSS's unlawful conduct, Plaintiff Jordan Kelley suffered economic and non-economic losses including but not limited to, emotional distress, depression, anxiety, humiliation, degradation, reputational harm, fear, despair, dread, loss of the enjoyments of the pleasures of life, lost back pay, lost front pay, lost earning capacity, and other economic and non-economic damages which will continue through and beyond this litigation.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue.**

## COUNT II

### HOSTILE ENVIRONMENT BASED ON SEX IN VIOLATION OF THE ELLIOTT LARSEN CIVIL RIGHTS ACT

110. Plaintiff Jordan Kelley reasserts each paragraph above word for word.

**ANSWER: In response to paragraph 110, Mr. Sauter restates and incorporates by reference his responses to paragraphs 1 through 109 above as if fully set forth herein.**

111. Plaintiff Jordan Kelley was subjected to communication or conduct on the basis of sex, as admitted by Defendant Sauter.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue.**

112. The unwelcome sexual conduct or communication was intended to, or in fact did, subsequently interfere with Plaintiff Jordan Kelley's employment or created an intimidating, hostile, or offensive work environment.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue.**

113. Defendant KPSS had actual and/or constructive notice of the harassment by Defendant Sauter but failed to investigate Defendant Sauter or take appropriate corrective action to stop Defendant Sauter's predation of female staff.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue.**

114. On information and belief, Defendant Sauter continued to have unlawful sexual relationships with female underlings after he discarded Plaintiff Jordan Kelley and moved a female employee's office from the back of the school to an officer [sic] next to his, which was formerly the Vice Principal's office.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue.**

115. As a direct and proximate result of Defendant Sauter's and KPSS's unlawful conduct, Plaintiff Jordan Kelley suffered economic and non-economic losses including but not limited to, emotional distress, depression, anxiety, humiliation, degradation, reputational harm, fear, despair, dread, loss of the enjoyments of the pleasures of life, lost back pay, lost front pay, lost earning capacity, and other economic and non-economic damages which will continue through and beyond this litigation.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue.**

**COUNT III**

**RETALIATION IN VIOLATION OF ELCRA**

116. Plaintiff Jordan Kelley reasserts each paragraph above.

**ANSWER: In response to paragraph 116, Mr. Sauter restates and incorporates by reference his responses to paragraphs 1 through 115 above as if fully set forth herein.**

117. Plaintiff engaged in protected activity when she complained to Defendant Sauter about his unlawful conduct, tried to end their relationship, and denied him sex.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue.**

118. Defendant Sauter retaliated against Plaintiff Jordan Kelley when, among other things, he made working conditions unbearable, refused to transfer Plaintiff Jordan Kelley to another school, threatened her with a poor evaluation and nonrenewal of her contract ***"which would be bad,"*** told her to resign and constructively discharged her.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue.**

119. A casual connection exists between Plaintiff Jordan Kelley's protected activity and the adverse employment actions visited upon her by Defendant Sauter made possible by the authority given him by KPSS, who knew or should have known of Defendant Sauter's sexual exploitation of female staff.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue.**

120. As a direct and proximate result of Defendant Sauter's and KPSS's unlawful conduct, Jordan Kelley suffered economic and non-economic losses including but not limited to, emotional distress, depression, anxiety, humiliation, degradation, reputational harm, fear, despair, dread, loss of the enjoyments of the pleasures of life, lost back pay, lost front pay, loss of earning capacity, and other economic and non-economic damages which will continue through and beyond this litigation.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue.**

## COUNT IV

## *FIRST AMENDMENT* RETALIATION PURSUANT TO *42 USC §1983* AS TO DEFENDANT AARON SAUTER

121. Plaintiff Jordan Kelley reasserts each paragraph above.

**ANSWER: In response to paragraph 121, Mr. Sauter restates and incorporates by reference his responses to paragraphs 1 through 120 above as if fully set forth herein.**

122. The *First Amendment* prohibits government from retaliating against citizens who exercise their *Free Speech* rights, one of which is to object to unlawful conduct and say "No" to authority.

**ANSWER: No response to this paragraph is required, as it does not contain any factual allegations but merely Plaintiff's own self-serving legal conclusions.**

123. Plaintiff Jordan Kelleys spoke out as a citizen on a matter of substantial public importance when she told Defendant Sauter she did not want to have sex with him.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue.**

124. A causal connection exists between Plaintiff Jordan Kelley's protected activity and the adverse employment actions described herein.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue.**

125. Defendant Sauter retaliated against Plaintiff Jordan Kelley by, among other things, refused her requests to transfer to another school, unilaterally changed her role and responsibilities, threatened her with a poor evaluation, nonrenewal of her contract "which would be bad" and constructively discharged her.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue.**

126. Defendant Sauter's conduct toward Plaintiff Jordan Kelley would deter a person of ordinary firmness from speaking out.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue.**

127. Plaintiff Jordan Kelley's speech to Defendant Sauter outweighed any competing governmental interest.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue.**

128. As a direct and proximate result of Defendants [sic] Sauter's unlawful conduct and violation of Plaintiff Jordan Kelley's clearly established constitutional rights, Jordan Kelley suffered economic and non-economic losses including but not limited to, emotional distress, depression, anxiety, humiliation, degradation, reputational harm, fear, despair, dread, loss of the enjoyments of the pleasures of life, lost back pay, lost front pay, loss of earning capacity, and other economic and non-economic damages which will continue through and beyond this litigation.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue.**

**COUNT V**

***MONELL* MUNICIPAL LIABILITY AGAINST KPSS FOR DEFENDANT SAUTER'S VIOLATION OF PLAINTIFF JORDAN KELLEY'S *FIRST AMENDMENT* FREE SPEECH RIGHTS PURSUANT TO *42 U.S.C. § 1983***

[sic] 127. Plaintiff Jordan Kelley reasserts each paragraph above word for word.

**ANSWER: In response to paragraph 127 [sic], Mr. Sauter restates and incorporates by reference his responses to the paragraphs above as if fully set forth herein.**

[sic] 128. Defendant KPSS is a municipal entity subject to suit under *42 U.S.C. § 1983.*

**ANSWER: The allegations of this paragraph pertain solely to Defendant KPS and, as such, no response from Mr. Sauter is required.**

129. Plaintiff Jordan Kelley suffered a deprivation of rights secured by the *First Amendment* to the United States Constitution when Defendant Sauter retaliated against her for refusing to continue having sex with him.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue.**

130. Defendant KPSS, through its deliberate conduct, and indifference was the moving force behind the *First Amendment* violation alleged in Count IV.

**ANSWER: The allegations of this paragraph pertain solely to Defendant KPS and, as such, no response from Mr. Sauter is required.**

131. Defendant KPSS maintained an official policy, custom, or practice that caused the *First Amendment* violations alleged herein.

**ANSWER: The allegations of this paragraph pertain solely to Defendant KPS and, as such, no response from Mr. Sauter is required.**

132. KPSS maintained a policy or custom of inadequate training and supervision of its principals and administrators regarding employees' *First Amendment* rights to refuse sexual advances and to speak out against sexual predation by supervisors, co-employees and others.

**ANSWER: The allegations of this paragraph pertain solely to Defendant KPS and, as such, no response from Mr. Sauter is required. Further responding, Mr. Sauter denies any allegation of "sexual predation" or other wrongdoing toward Plaintiff.**

133. KPSS failed to train and supervise its principals and administrators on, among other things: The constitutional rights of employees to refuse unwanted sexual contact; Appropriate boundaries between supervisors and subordinate employees; Recognition and prevention of *quid pro quo* sexual coercion; The prohibition against retaliation for rejecting sexual advances; and, Proper responses to reports of sexual misconduct by supervisors and/or co-employees.

**ANSWER: The allegations of this paragraph pertain solely to Defendant KPS and, as such, no response from Mr. Sauter is required.**

134. The need for training and supervision on these matters was obvious and known to KPSS given that Plaintiff Jordan Kelley's report was not the first time a Defendant KPSS had been sued because a male Principal had used his authority to coerce sex from a female subordinate.

**ANSWER: The allegations of this paragraph pertain solely to Defendant KPS and, as such, no response from Mr. Sauter is required.**

135. Despite this clear pattern of conduct, Defendant KPSS failed to implement adequate training or supervision policies to prevent future violations.

**ANSWER: The allegations of this paragraph pertain solely to Defendant KPS and, as such, no response from Mr. Sauter is required.**

136. Defendant KPSS's failure to train and supervise amounted to deliberate indifference to the constitutional rights of its employees, including but not limited to Plaintiff Jordan Kelley.

**ANSWER: The allegations of this paragraph pertain solely to Defendant KPS and, as such, no response from Mr. Sauter is required.**

137. The inadequate training and supervision was the moving force behind Defendant Sauter's retaliation against Plaintiff Jordan Kelley for exercising her *First Amendment* rights.

**ANSWER: The allegations of this paragraph pertain solely to Defendant KPS and, as such, no response from Mr. Sauter is required. Further responding, Mr. Sauter denies any allegation that he retaliated against Plaintiff.**

138. In the alternative, Defendant KPSS maintained a custom of tolerance and acquiescence to *First Amendment* violations by its principals and administrators.

**ANSWER: The allegations of this paragraph pertain solely to Defendant KPS and, as such, no response from Mr. Sauter is required. Further responding, Mr. Sauter denies as untrue any allegation of any First Amendment violation toward Plaintiff.**

139. There existed a clear and persistent pattern of Defendant KPSS principals using their authority to coerce sexual relationships with subordinate employees and retaliating against those employees when they refused or attempted to end such relationships.

**ANSWER: The allegations of this paragraph pertain solely to Defendant KPS and, as such, no response from Mr. Sauter is required. Further responding, Mr. Sauter denies as untrue any allegations of this paragraph relating to coercion of sexual relationships or retaliation.**

140. Defendant KPSS had actual or constructive notice of this pattern of constitutional violations through Plaintiff Jordan Kelley's May 13, 2026 report and prior similar reports.

**ANSWER: The allegations of this paragraph pertain solely to Defendant KPS and, as such, no response from Mr. Sauter is required.**

141. Despite notice of Defendant Sauter's predatory conduct and retaliation, Defendant KPSS failed to investigate or take corrective action.

**ANSWER: The allegations of this paragraph pertain solely to Defendant KPS and, as such, no response from Mr. Sauter is required. Further responding, Mr. Sauter denies as untrue any allegations of this paragraph that he engaged in predatory conduct or retaliation.**

142. Defendant KPSS's failure to investigate or remedy Defendant Sauter's conduct constituted tacit approval of the unconstitutional conduct, such that Defendant KPSS's deliberate indifference and failure to act amounted to an official policy of inaction.

**ANSWER: The allegations of this paragraph pertain solely to Defendant KPS and, as such, no response from Mr. Sauter is required. Further responding, Mr. Sauter denies as untrue any allegation or implication of wrongful conduct toward Plaintiff by him.**

143. Defendant KPSS's custom of tolerance and inaction was the moving force and direct causal link in the *First Amendment* deprivation suffered by Plaintiff Jordan Kelley.

**ANSWER: The allegations of this paragraph pertain solely to Defendant KPS and, as such, no response from Mr. Sauter is required. Further responding, Mr. Sauter denies that Plaintiff suffered any "First Amendment deprivation."**

144. In further alternative, Defendant KPSS ratified Defendant Sauter's unconstitutional retaliation against Plaintiff Jordan Kelley.

**ANSWER: The allegations of this paragraph pertain solely to Defendant KPS and, as such, no response from Mr. Sauter is required. Further responding, Mr. Sauter denies as untrue any allegation of "unconstitutional retaliation" against Plaintiff.**

145. Upon receiving notice of Defendant Sauter's conduct on May 13, 2026 and May 23, 2026, officials with final policymaking authority for Defendant KPSS failed to take any disciplinary action against Defendant Sauter.

**ANSWER: The allegations of this paragraph pertain solely to Defendant KPS and, as such, no response from Mr. Sauter is required. Further responding, Mr. Sauter denies as untrue any allegation of wrongful conduct toward Plaintiff contained in this paragraph.**

146. KPSS permitted Defendant Sauter to quickly resign on or about June 3, 2026 without investigation, discipline, notice to the community or any remedial measures to address the harm to Plaintiff Jordan Kelley and other female teachers, parents, and others.

**ANSWER: The allegations of this paragraph pertain solely to Defendant KPS and, as such, no response from Mr. Sauter is required. Further responding, Mr. Sauter denies as untrue any allegation of wrongful conduct by him.**

147. By permitting Defendant Sauter to resign without consequence after being notified of his unconstitutional conduct, Defendant KPSS ratified the *First Amendment* violation.

**ANSWER: The allegations of this paragraph pertain solely to Defendant KPS and, as such, no response from Mr. Sauter is required. Further responding, Mr. Sauter denies as untrue any allegation of wrongful conduct by him.**

148. The ratification by Defendant KPSS officials with final policymaking authority was the moving force behind Plaintiff Jordan Kelley's injury.

**ANSWER: The allegations of this paragraph pertain solely to Defendant KPS and, as such, no response from Mr. Sauter is required. Further responding, Mr. Sauter denies as untrue any allegation of wrongful conduct by him.**

149. As a direct and proximate result of Defendant KPSS's policies, customs, practices, inadequate training and supervision, deliberate indifference, and/or ratification of constitutional violations, Jordan Kelley suffered economic and non-economic losses including but not limited to, emotional distress, depression, anxiety, humiliation, degradation, reputational harm, fear, despair, dread, loss of the enjoyments of the pleasures of life, lost back pay, lost front pay, lost earning

capacity, and other economic and non-economic damages will continue through and beyond this litigation.

**ANSWER: Mr. Sauter denies the allegations of this paragraph as untrue.**

Respectfully submitted,

FOSTER, SWIFT, COLLINS & SMITH, P.C.
Attorneys for Defendant Sauter

Dated: September 16, 2026

By: /s/ *Kevin J. Roragen (P56510)*
Kevin J. Roragen (P56510)
313 S. Washington Square
Lansing, MI 48933
(517) 371-8119
kroragen@fosterswift.com

**AFFIRMATIVE DEFENSES**

Plaintiff will please take note that Defendant may rely upon one or more of the following affirmative defenses.

1. Plaintiff has failed to state a claim on which relief can be granted.

2. Plaintiff's claims are barred, in whole or in part, by her failure to exhaust administrative remedies.

3. Plaintiff's claims may be barred by one or more applicable statute(s) of limitation.

4. The sexual relationship between Plaintiff and Mr. Sauter was consensual and welcomed by Plaintiff.

5. No adverse action was taken against Plaintiff in retaliation for any protected activity.

6. Plaintiff has not alleged or proved that she engaged in any protected activity.

7. Mr. Sauter was not Plaintiff's direct supervisor and did not have the authority or power to affect the terms and conditions of her employment.

8. Plaintiff's claims are barred, in whole or in part, by the doctrine of qualified immunity.

9. Plaintiff's state law claims may be barred, in whole or in part, by Michigan's doctrine of governmental immunity.

10. Plaintiff has failed to mitigate her damages, if any.

Defendant reserves the right to amend or modify these affirmative defenses at any time for any reason permitted by law.

Respectfully submitted,

FOSTER, SWIFT, COLLINS & SMITH, P.C.
Attorneys for Defendant Sauter

Dated: September 16, 2026

By: /s/ *Kevin J. Roragen (P56510)*
Kevin J. Roragen (P56510)
313 S. Washington Square
Lansing, MI 48933
(517) 371-8119
kroragen@fosterswift.com

**RELIANCE ON JURY DEMAND**

NOW COMES Defendant Aaron Sauter ("Defendant"), by and through his attorneys, Foster, Swift, Collins & Smith, P.C., and hereby relies upon Plaintiff's jury demand.

Respectfully submitted,

FOSTER, SWIFT, COLLINS & SMITH, P.C.
Attorneys for Defendant Sauter

Dated: September 16, 2026

By: /s/ *Kevin J. Roragen (P56510)*
Kevin J. Roragen (P56510)
313 S. Washington Square
Lansing, MI 48933
(517) 371-8119
kroragen@fosterswift.com